UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PHILLIP RANDALL TILLIE,

            Plaintiff,

v.                                                             Case No. 1:24-cv-625

UNKNOWN LOFTON, et al.,                   Hon. Hala Y. Jarbou

            Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion (ECF No. 2) for leave to proceed *in forma pauperis* in this action. This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

      Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Erway and Wells. The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claims against Defendants McColl and Turner.

The following claims remain in the case: (1) Eighth Amendment excessive force claims against Defendants Lofton, Ward, Bielas, Rojas, and Baker; (2) Eighth Amendment failure to protect claims against Defendants Makey, Lucas, McColl, Turner, Unknown Party #1, and Baker; (3) Eighth Amendment deliberate indifference to medical needs claims against Defendants Lucas, Baker, Makey, McColl, Turner, Hall, Jones, and Unknown Party #1; and (4) First Amendment retaliation claims against Defendants Bielas, Lofton, Ward, and Hall.

<u>**Discussion**</u>

## I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues Sergeants Unknown Lofton, Unknown Ward, and Unknown Hall, Corrections Officers Unknown Bielas, Unknown Rojas, Unknown Jones and Unknown Wells, Lieutenants Unknown Makey and Unknown Baker, Nurse Unknown Lucas, Assistant Deputy Warden Unknown Erway, Resident Unit Manager Unknown McColl, Assistant Resident Unit Supervisor Unknown Turner, and Qualified Mental Health Provider Unknown Party #1 in their personal and official capacities.

In his complaint, Plaintiff alleges that on October 10, 2023, Plaintiff was denied his yard time in violation of policy. (ECF No. 1, PageID.5.) Plaintiff told Defendant Bielas that he was going to file a grievance and go on a hunger strike, but Defendant Bielas refused to give Plaintiff a grievance form. (*Id.*) Later that morning, Plaintiff was removed from his cell by Defendant Bielas and taken to the shower. Defendant Bielas told Plaintiff that he was going to be placed in "Bam-Bam." (*Id.*) Plaintiff stated that he would file a grievance and Defendant Bielas stated, "Fuck your policy, you can suck my dick." (*Id.*) Plaintiff felt unsafe and asked to have someone take Defendant

2

Bielas' place. Plaintiff also asked to report sexual harassment and Defendants Ward and Lofton laughed. (*Id.*)

Defendant Rojas then approached the shower while putting on gloves, saying we're going to have some fun with you." (*Id.*) Defendants Ward, Lofton, Bielas, and Rojas then entered the shower. Plaintiff turned so that the handcuffs could be placed on him and offered no resistance but was nonetheless tossed on his stomach. (*Id.*) Plaintiff states that he just lay there repeating "okay" while Defendants Lofton and Ward used their knees to press into Plaintiff's ankles, knees, and thighs. (*Id.*) When Defendant Lofton placed Plaintiff's ankle in a hold, Plaintiff screamed that he had screws and rods in his ankle. Defendant Lofton called Plaintiff a "n*gger" and said, "I bet you want to write another grievance." (*Id.*, PageID.8.) Defendants Lofton and Ward then started punching Plaintiff in his ankles, legs, and thighs. Defendant Ward shoved his knee into Plaintiff's lower back, while Defendant Lofton punched Plaintiff in the head. (*Id.*, PageID.5.) Defendant Ward then grabbed Plaintiff's genitals and Defendant Bielas took a shield and pressed Plaintiff's face against the ground. Defendant Bielas then used the shield on the back of Plaintiff's neck to cut off Plaintiff's air supply. (*Id.*, PageID.5-7.) Defendant Bielas also repeatedly pulled Plaintiff's hair while he was restrained and not resisting. (*Id.*, PageID.7.) Plaintiff states that Defendant Rojas occasionally grabbed Plaintiff's arms and twisted them, and that Defendant Makey stood by and encouraged the excessive use of force. (*Id.*, PageID.6, 8.)

Plaintiff states that he later reported sexual harassment and the assault to Defendant Makey, who merely stated that he was not going to go against his staff and refused to contact healthcare despite the fact that Plaintiff was unable to walk on his right foot. (*Id.*, PageID.6.) Plaintiff alleges that Defendant Lucas likewise stood by while Plaintiff was assaulted and refused to document Plaintiff's injuries, telling Plaintiff that all she could do was clean his open cuts. Defendant Lucas

ignored Plaintiff's request to report sexual harassment and his complaint that the restraints were too tight and watched an unknown sergeant tighten them further until his hands turned purple. (*Id.*, PageID.6, 9.) Plaintiff asserts that Defendants McColl and Turner also stood by and watched Plaintiff being assaulted, refused to contact healthcare, and refused to document Plaintiff's reports of sexual harassment and assault. (*Id.*)

Following the assault, Plaintiff was placed in a restraint chair and Defendant Bielas was still allowed to be around Plaintiff despite his complaint of sexual harassment. During this time, Defendant Bielas made comments such as, "Fucking with me will have you sitting in a chair . . . I don't care about a lawsuit, I'm undefeated . . . You're nothing but a pussy . . . I win and you lose." (*Id.*, PageID.7.) Defendant Baker, who had been present during the assault and had done nothing to stop it, tightened Plaintiff's restraints until they pinched Plaintiff's skin and caused his hands to turn purple. (*Id.*, PageID.9.) Defendant Baker taunted Plaintiff by threatening to take him back to the shower and asking him if he remembered screaming for help. Defendant Baker also told Plaintiff that he would not be seeing healthcare until he was transferred to another facility. (*Id.*)

Plaintiff alleges that Defendant Erway was aware of his staff's use of force. Plaintiff states that Defendant Erway came to speak to him and could observe his injuries but failed to contact healthcare. Defendant Erway also failed to investigate his staff's use of excessive force. (*Id.*, PageID.6.)

Plaintiff states that Defendant Unknown Party #1 watched the assault on Plaintiff and did not attempt to intervene. Plaintiff told Defendant Unknown Party #1 that he was not suicidal, but she failed to intervene on Plaintiff's behalf. (*Id.*, PageID.10.)

Plaintiff alleges that on October 11, 2023, Defendant Jones ignored Plaintiff's repeated attempts to see healthcare for complaints of having a concussion and being unable to walk on his right foot/ankle. (*Id.*, PageID.7.)

On October 17, 2023, Plaintiff attempted to inform Defendant Hall of his concussion and showed him his injuries. Defendant Hall responded, "You got beat up, I bet you'll stop filing grievances now." (*Id.*, PageID.6.) Defendant Hall then left the area while laughing. (*Id.*)

Plaintiff states that on October 18, 2023, he made a complaint to the Attorney General regarding the failure of healthcare to see Plaintiff for his injuries. On October 19, 2023, Defendant Wells entered Plaintiff's cell and ripped up a picture of Plaintiff's mother and some paperwork Plaintiff had received from the Attorney General. (*Id.*, PageID.6-7.) Defendant Wells also confiscated a grievance and a complaint that Plaintiff was planning on filing on Defendant Bielas. (*Id.*, PageID.7.)

Plaintiff seeks compensatory and punitive damages and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

5

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Many of the allegations in Plaintiff's complaint appear to implicate his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson*

*v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff asserts that Defendants Lofton, Ward, Bielas, and Rojas used excessive force against him when they assaulted him on October 10, 2023, that Defendants Makey, Lucas, McColl, Turner, Unknown Party #1, and Baker were present during the assault and failed to stop it, and that following the assault, Defendant Baker tightened Plaintiff's restraints to the point that his hands turned purple. Plaintiff's claim involving the use of force, and the application of restraints must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir.

1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

As set forth above, Plaintiff alleges that Defendants Lofton, Ward, Bielas, and Rojas slammed him to the floor and used their knees to press into Plaintiff's ankles, knees, thighs, and back, punched his head and extremities, twisted his arm, grabbed his genitals, and used a shield to cut off Plaintiff's air supply. Plaintiff asserts that he was compliant and unresisting the entire time. Plaintiff also alleges that Defendant Baker tightened his restraints to the point where Plaintiff's hands turned purple despite Plaintiff's continued nonresistance. Taking these allegations as true, as the Court must do when conducting an initial review of the complaint, the Court concludes that at this point in the litigation, Plaintiff has stated Eighth Amendment excessive force claims against Defendants Lofton, Ward, Bielas, Rojas, and Baker.

Plaintiff asserts that Defendants Makey, Lucas, McColl, Turner, Unknown Party #1, and Baker failed to protect him when they stood by and watched him being assaulted. Plaintiff alleges that Defendant Makey encouraged use of force during the assault. An officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *accord Alexander v. Carter ex. rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018). Based on the allegations in the complaint, the assault occurred over a period of minutes. Although Plaintiff's failure to protect claims against

9

Defendants Makey, Lucas, McColl, Turner, Unknown Party #1, and Baker are somewhat conclusory, at this point in the litigation Plaintiff has sufficiently set forth Eighth Amendment failure to protect claims against these Defendants.

Plaintiff asserts that Defendants Lucas, Baker, Makey, McColl, Turner, Hall, Jones, Unknown Party #1, and Erway either refused or ignored his requests for medical treatment following the assault. Plaintiff states that following the assault he attempted to obtain medical treatment for a concussion and an injured ankle. Plaintiff asserts that Defendant Lucas was deliberately indifferent to his need for medical treatment when she told Plaintiff that all she could do was clean his open cuts. Defendant Lucas also ignored Plaintiff's complaint that the restraints were too tight and watched an unknown sergeant tighten them further until his hands turned purple. (*Id.*, PageID.6, 9.)

Plaintiff alleges that the injuries he sustained as a result of being assaulted were obvious and that following the assault, Defendant Baker told Plaintiff that he would not be seeing healthcare until he was transferred to another facility. (ECF No. 1, PageID.9.) Plaintiff states that Defendant Makey refused to contact healthcare despite the fact that Plaintiff was unable to walk on his right foot. (*Id.*, PageID.6.) Plaintiff asserts that Defendants McColl and Turner watched Plaintiff being assaulted and refused to contact healthcare. (*Id.*) Plaintiff alleges that on October 11, 2023, Defendant Jones ignored Plaintiff's repeated attempts to see healthcare for complaints of having a concussion and being unable to walk on his right foot/ankle. (*Id.*, PageID.7.) On October 17, 2023, Plaintiff attempted to inform Defendant Hall of his concussion and showed him his injuries. Defendant Hall responded, "You got beat up, I bet you'll stop filing grievances now." (*Id.*, PageID.6.) Defendant Hall then left the area while laughing. (*Id.*) Plaintiff states that

Defendant Erway came to speak to him and clearly observed his injuries but failed to contact healthcare. (*Id.*)

Plaintiff's claims for denial of medical care are largely conclusory. Plaintiff concedes that Defendant Lucas was present during and after the assault and that she cleaned his open cuts. However, Plaintiff states that she flatly refused to evaluate him for other injuries or to provide any other treatment. Moreover, Plaintiff states that Defendants Makey, McColl, Turner, Unknown Party #1, and Baker, who were present during and immediately following the assault could see his injuries and acted with deliberate indifference in refusing to allow him to receive medical treatment. Therefore, at this point in the litigation, Plaintiff's Eighth Amendment denial of medical care claims against Defendants Lucas, Baker, Makey, McColl, Turner, Hall, Jones, and Unknown Party #1 will not be dismissed.

With respect to Plaintiff's conclusory assertion that Defendant Erway and non-party Warden Burgess saw his injuries but failed to contact healthcare on Plaintiff's behalf, the Court notes that Plaintiff fails to allege any specific facts regarding the date or time he was seen by Defendant Erway, or whether Defendant Erway merely stood in the hallway outside Plaintiff's cell while they spoke. Moreover, Plaintiff fails to explain what injuries were observable to Defendant Erway. Conclusory allegations of unlawful conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, because Plaintiff fails to allege any specific facts in support of his claim that Defendant Erway was deliberately indifferent to a serious need for medical treatment, he fails to state an Eighth Amendment claim against him.

**B.      Retaliation**

Plaintiff claims that Defendants Bielas, Lofton, Ward, McColl, Hall, Turner, McColl, and Wells retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In his complaint, Plaintiff makes specific factual allegations in support of his retaliation claims against Defendants Bielas, Lofton, Ward, and Hall. Plaintiff alleges that prior to the assault on October 10, 2023, Plaintiff told Defendant Bielas that he was going to file a grievance and go on a hunger strike. (ECF No. 1, PageID.5.) Following the assault on Plaintiff, Defendant Bielas made comments such as, "Fucking with me will have you sitting in a chair . . . I don't care about a lawsuit, I'm undefeated . . . You're nothing but a pussy . . . I win and you lose . . . I'll teach you about filing grievances." (*Id.*, PageID.7.) During the alleged assault, Defendant Lofton called Plaintiff a "n*gger" and said, "I bet you want to write another grievance," and that Defendant Ward stated, "Snitches get stitches," and told Plaintiff that if he filed another grievance, they would "f**k [him] up again." (*Id.*, PageID.8.) On October 17, 2023, Plaintiff attempted to inform Defendant Hall of his concussion and showed him his injuries. Defendant Hall responded, "You

got beat up, I bet you'll stop filing grievances now." (*Id.*, PageID.6.) Defendant Hall then left the area while laughing. (*Id.*) The Court concludes that at this point in the litigation, Plaintiff has stated a retaliation claim against Defendants Bielas, Lofton, Ward, and Hall.

With respect to Defendants McColl and Turner, Plaintiff alleges that they failed to intervene while Plaintiff was being assaulted, refused to contact healthcare on Plaintiff's behalf, and authorized his placement in a segregation / observation cell on suicide watch, and continued to deprive him of personal property, hygiene items, mattress, sheets, towels, or washcloths following his removal from suicide watch. (*Id.*, PageID.8-9.) Plaintiff makes a conclusory assertion that this was in retaliation for Plaintiff's grievances and hunger strike. (*Id.*)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendants Turner and McColl. He has not presented any facts to support his conclusion that Defendants Turner and McColl retaliated against him

13

because of prior grievances or a hunger strike. Accordingly, his speculative allegation fails to state a retaliation claim against either Defendant Turner or McColl.

Plaintiff also appears to be asserting a retaliation claim against Defendant Wells. Plaintiff states that on October 18, 2023, he made a complaint to the Attorney General regarding the failure of healthcare to see Plaintiff for his injuries. On October 19, 2023, Defendant Wells entered Plaintiff's cell and ripped up a picture of Plaintiff's mother and some paperwork Plaintiff had received from the Attorney General. (ECF No. 1, PageID.6-7.) Defendant Wells also confiscated a grievance and a complaint that Plaintiff was planning on filing on Defendant Bielas. (*Id.*, PageID.7.) However, as with Defendants Turner and McColl, Plaintiff fails to allege any facts showing that Defendant Wells was motivated by a desire to retaliate against Plaintiff for his protected conduct. Plaintiff does not even allege facts showing that Defendant Wells was aware of the complaint to the Attorney General. Therefore, Plaintiff's retaliation claim against Defendant Wells is properly dismissed.

### C.      Failure to Investigate by Defendant Erway

Plaintiff also claims that Defendant Erway failed to investigate the conduct of his subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may

14

not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Erway encouraged or condoned the conduct of his subordinates, or authorized, approved or knowingly acquiesced in the conduct. Plaintiff merely makes a conclusory assertion that Defendant Erway failed to conduct an investigation of the incident. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Erway was personally involved in the events surrounding the alleged use of excessive force. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Defendant Erway is properly dismissed from this action.

**D.      Due Process claim against Defendant Wells**

To the extent that that Plaintiff seeks to assert a due process claim against Defendant Wells for the property destroyed and confiscated during the cell search on October 19, 2023, the Court notes that such a claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Mar. 27, 2017). Alternatively, Michigan law authorizes

actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant Wells will be dismissed.

<u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Erway and Wells will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claims against Defendants McColl and Turner.

The following claims remain in the case: (1) Eighth Amendment excessive force claims against Defendants Lofton, Ward, Bielas, Rojas, and Baker; (2) Eighth Amendment failure to protect claims against Defendants Makey, Lucas, McColl, Turner, Unknown Party #1, and Baker; (3) Eighth Amendment deliberate indifference to medical needs claims against Defendants Lucas, Baker, Makey, McColl, Turner, Hall, Jones, and Unknown Party #1; and (4) First Amendment retaliation claims against Defendants Bielas, Lofton, Ward, and Hall.

An order consistent with this opinion will be entered.

Dated: September 23, 2024       /s/ Hala Y. Jarbou
                                          HALA Y. JARBOU
                                          CHIEF UNITED STATES DISTRICT JUDGE